PER CURIAM.
The claimant in this workers’ compensation case appeals the judge’s ruling that a stipulation entered into between the claimant and the e/c terminated the claimant’s right to receive supplemental compensation benefits under Section 440.15(1)(e)1., Florida Statutes (1981).[1] We reverse and remand.
This case comes to us in a rather unique procedural posture. We are reviewing an order of the judge of compensation claims, entered on October 10, 1988, ruling that a prior order entered by another judge on December 27, 1985, effected a “washout” settlement which terminated the appealing claimant’s right to supplemental benefits despite explicit language in that prior order to the contrary. The critical issue is whether the judge had the authority, at the time the appealed order was issued, to effect a change in the terms of the prior order. A detailed review of the facts leading up to the entry of this order is necessary in discussing this issue.
The claimant was injured in 1981 in a compensable accident. His claim was subject to hearings resulting in two orders, one dated June 3,1982, and the other dated October 18, 1982. In August 1985, he was accepted by the employer’s carrier, Travelers Insurance Company, as permanently totally disabled, having reached maximum medical improvement on June 24, 1985. In December 1985, the claimant and Travelers reached agreement reduced to a written stipulation that provided for a partial lump sum payment, payment of disability compensation benefits on a monthly basis pursuant to a monthly annuity purchased by Travelers from a related insurance company (Travelers Life Insurance Company), continuation of claimant’s medical benefits, and preservation of claimant’s right to future supplemental benefits payable from the Workers Compensation Trust Fund. The provisions of that stipulation pertinent to this appeal expressly provided:
3. * * * that [claimant’s] average weekly wage is $212.88, and that his weekly disability rate is $141.92.
4. That claimant made a request for advance payment of some of his future *178 disability benefits, and the carrier for the employer agrees to make such advance payments a part of the compensation for which said employer is liable, by the payment of an up front lump sum in the amount of $20,000.00. Parties agree that it is in the claimant’s best interest to receive this payment, because of the following agreement on future disability payments.
5. Further, the parties agree that claimant’s future disability payments commencing on or about January 2, 1986 shall be made on or before January 31, 1986. The payments shall be made on a calendar month basis thereafter, the first commencing on or about January 31, 1986, and each before the end of the month thereafter. Each payment thereafter shall be made on or before the last day of each month. The amount of the payments shall equal $700.00 per month. The payments shall continue for a 10 year period certain. However, the payments shall continue for claimant’s lifetime.
(Parties note and agree that claimant’s present monthly payments under the Act are structured such that his monthly payment totals $610.26.)
6. That the beneficiary under the payment schedule set up, which will be paid out of an annuity, shall be claimant’s wife....
7. That claimant’s date of birth is April 28, 1936, and that at his present age of 49, he has a life expectancy of 26 years. That the annuity to be purchased using the net worth value of his disability compensation under the Act, shall be purchased with Travelers Life Insurance Company, a reported Best rated AAA, and annuity writer.
8. That any setoff provisions of the Act have been taken into consideration, as set out within the terms and meanings of the Federal Social Security Disability law.
⅜ $ ⅜ ⅜- ⅜ ⅝
11. That the parties agree that this advance payment of compensation and method of delivering the disability benefits, and payment of attorneys’ fees, is not an advance payment of compensation such that the liability of the employer for future payments of compensation shall be discharged; that this is not to be construed as a lump sum payment in exchange for release of liability of the employer for compensation or medical benefits.
12. The claimant’s entitlement to medical benefits remains open within the terms and meanings of the Act.
* * -⅜ * * *
14. That no attorneys’ fee is due to be paid claimant’s attorney from claimant.
15. That carrier for employer remains responsible on its obligation to the supplemental disability payment fund and that claimant is to continue to receive his supplemental payments.
This stipulation was executed by the attorneys for the claimant and for the employer and carrier.
On the day following the execution of the stipulation, December 27, 1985, Judge Melanie Jacobson entered an order approving the agreement as follows:
This cause, having come on before the undersigned upon claimant’s Stipulation and the carrier for the employer’s Stipulation, for an advance payment, and the rearrangement of the weekly benefits to be paid on a monthly basis through an annuity, and the life expectancy of claimant having been considered, and the death benefit to the wife, it is noted from the Stipulation and testimony that:
■ 1. Claimant would be paid more money on a monthly basis than he would be paid on a biweekly basis under the terms of the Stipulated Agreements as to method of payment.
2. That dependency death benefits available are extended under the Stipulated Agreement.
Wherefore, I find that the stipulated settlement is for the best interest of the claimant and is reasonable under the circumstances of this particular case. Having been otherwise fully advised, it is hereby ORDERED that the Stipulation of the parties is set out herein above is *179 approved, and the parties are ordered to comply therewith.
It is clear from this order that the stipulation and its terms were approved and effectively incorporated therein and, from that point forward, governed the rights of the parties until modified pursuant to Section 440.28.
Travelers commenced paying monthly compensation benefits as ordered. In December 1987, claimant contacted his attorney to advise that supplemental benefits had never commenced. Claimant’s attorney promptly notified the Florida Department of Labor and Employment Security, Worker’s Compensation Division, of the problem. A claims examiner in the Department requested by letter dated January 8, 1988, that claimant’s attorney provide a BCL-4 as Travelers had not reported any permanent total disability payments. By letter dated January 22, 1988, the Department advised claimant’s attorney that the employer and carrier had been discharged of its obligation to pay “compensation” and that entitlement to supplemental benefits ceased when the order of December 27, 1986 was entered by the judge. That correspondence also advised that claimant was entitled to a lump sum payment for supplemental benefits for June 24, 1985 (MMI) through December 25, 1985, and on February 4, 1988, the Department formally notified claimant of this entitlement. As a result, on February 18, 1988, claimant’s attorney filed a claim for these benefits and an application for hearing. The claim was amended in August 1988, and then heard in September.
The only testimony offered at the hearing was from the claimant. Several documents establishing the foregoing facts and the payment of supplemental benefits for the period June-December 1985 pursuant to Section 440.15(1)(e)1. were received in evidence by the judge of compensation claims. The judge heard argument from the attorneys representing claimant, Travelers, and the Department, and then entered the order of October 10, 1988. After acknowledging the entry of the December 27, 1985 order, the judge then recited in material part:
11. The Division of Workers’ Compensation made one payment in supplemental . benefits to the claimant in the amount of $778.87. This payment represented the amount of supplemental benefits due from June 24, 1987 [sic] until December 25, 1985. Thereafter, the Division took the position that the stipulation and order of December 27, 1985, ended the claimant’s right to supplemental benefits.
* * * * * *
14. The employer and carrier take the position that according to the law in effect in 1981, the State of Florida Workers’ Compensation Trust Fund is and/or was responsible for payment of supplemental benefits pursuant to Florida Statute Section 440.15(1)(e) [sic].
15. The State of Florida, Division of Workers’ Compensation, takes the position that the stipulation of the parties approved on December 27, 1987, terminated the claimant’s entitlement to supplemental benefits. The Division also asserts that no attorney’s fees, costs or interest may be had from the Division in a claim for supplemental benefits.
Having heard the evidence, argument of counsel and being otherwise fully advised in the premises thereof, it is hereby
ORDERED AND ADJUDGED as follows:
1. The stipulations of the parties as set forth are accepted by the undersigned Deputy Commissioner.
2. The primary dispute in this case revolves around the legal effect of the stipulation and order approved on December 27, 1985.... The stipulation provides essentially that the claimant made a request for advanced payment of “some of his future disability payments”. In the body of the stipulation, the claimant and the employer/carrier agree that an advance lump sum payment in the amount of $20,000.00 is to be made to the claimant. Additionally, the stipulation provides that the carrier purchase an annuity which would pay the claimant $700.00 per month. The stipulation also *180 notes that the claimant’s present monthly income from permanent total disability benefits is $610.26. Additionally, the stipulation provides for a ten year certainty of payments which would flow to the claimant’s wife in the event of his early death. The stipulation also provides for payment of attorney’s fees by the carrier in the amount of $15,000.00. There is also language in the stipulation to the effect that the stipulation does not constitute an advance payment of compensation in exchange for a release of liability in favor of the employer/carrier for future payments of compensation. Specifically, the agreement provides “this is not to be construed as a lump sum payment in exchange for release of liability of the employer for compensation or medical benefits.” Additionally, there is a provision that the employer remain responsible for its obligation to pay the claimant supplemental benefits.
3. I find from the evidence and the law that the position taken by the State of Florida, Division of Workers’ Compensation is correct. This case is factually similar to Division of Workers’ Compensation, Workers’ Compensation Administration Trust Fund v. Hansborough, 507 So.2d 785 (Fla. 1st DCA 1987). In that case, the court held that the Deputy Commissioner is to go beyond the plain language of such a stipulation. The court held that the stipulation in that case was “a ruse designed solely to create the appearance of continuing liability and responsibility by the E/C so as to enable claimant to continue receiving supplemental benefits.” 507 So.2d at 786. The court also noted in Shipp v. State Workers’ Compensation Trust Fund, 481 So.2d 76 (Fla. 1st DCA 1986), that the effect of the agreement as a whole is to be considered in determining its legal effect. Similar results were reached in J.P.[F.] Hoff Electric Co. v. Powell, 485 So.2d 1290 (Fla. 1st DCA 1986), and Boynton Landscape Co. v. Dickinson, 487 So.2d 1106 (Fla. 1st DCA 1986).
4. It is also important to note that the State of Florida, Division of Workers’ Compensation was not a party to the stipulation approved on December 27, 1985.
5. I find from the evidence that the legal effect of the stipulation rose to the level of a “washout” settlement. It is arguable that the annuity payments received by the claimant are conceptually being made outside of the Workers’ Compensation system. It appears, from the stipulation, that a separate annuity contract was purchased for the claimant. If for some reason the annuity benefits were stopped, it appears as if the claimant would have a simple contract remedy under the annuity contract. In effect, the employer/carrier has finalized its responsibility under Chapter 440 by purchasing the annuity and making the advance lump sum payment.
6. Additionally, it appears as if the claimant’s right to change or modify the terms of the stipulation would end on December 27, 1985. The claimant potentially could have brought a petition for modification within two years of the date of the order approving the stipulation. Although the claimant may have two years from the date of last payment of compensation under the order, to the extent that the claimant is receiving payment “outside of the Workers’ Compensation system,” it may be that the claimant has no legal right after December 27, 1987, to attempt to modify the stipulation. To the extent that the stipulation may be final and not subject to modification at this time, the stipulation seems to be final and have risen to the level of a washout settlement.
7. Although Paragraph 15 of the stipulation provides that the employer remain responsible for supplemental benefits, it appears clear that the employer/carrier never had a legal obligation to provide supplemental benefits and that this responsibility lies with the State of Florida, Workers’ Compensation Trust Fund.
Based on the foregoing, the judge denied the claimant’s “claim for supplemental benefits from December 26, 1985 to date.”
*181 Claimant raises two points on appeal. First, he argues that the stipulation was not a “washout” but merely another means of payment by the insurance carrier. The carrier bought an annuity, based on the net worth value of permanent total disability benefits thus securing monthly benefits of $700 and $20,000 up-front payment to the claimant. The specific provisions of paragraphs 11 and 15 indicate that it was the intention of both parties that claimant’s supplemental benefits would remain to be paid by the state. Second, he argues that the Workers’ Compensation Administration Trust Fund was not a party to the original settlement agreement and the Fund lacks standing to contest the agreement. To raise the defense that a settlement is unreasonable from the standpoint of the employer and carrier and the claimant would nullify the provisions of Section 440.20(12) & (13), which subsections should be read in pari materia with Section 440.50 establishing the Trust Fund.
In response, the employer and carrier argue, first, that they are not responsible for the payment of supplemental benefits, that being the responsibility of the Trust Fund under Section 440.15(1)(e)1., since the accidental injury occurred before July 1, 1984. Therefore, the state is responsible for payment of supplemental benefits if due. However, the employer and carrier made a lump sum payment to the claimant and purchased an annuity based on the net worth value of the permanent total disability benefits, thus terminating its obligation to make permanent total disability payments to the claimant under the act. Second, the employer and carrier argue that the Trust Fund, being the entity having to pay the supplemental benefits, clearly has standing to object to the validity of the stipulation.
The Division of Workers’ Compensation responds, first, that denial of the claim was correct because the liability of the employer and carrier for future payment of benefits under chapter 440 had terminated by reason of the carrier’s purchase of the annuity to using the present net value of claimant’s future permanent total disability benefits, which paid greater benefits than provided under chapter 440. This constituted a discharge of their liability, for it was not merely a change in the manner of payment of permanent total disability benefits but was completely outside the employer’s and carrier’s liabilities under chapter 440, leaving them with no further obligation to pay disability benefits. Secondly, the Division argues that it has standing because the original settlement was not the subject of the hearing below, rather it was the legal effect thereof on claimant’s entitlement to supplemental benefits that was at issue.
Obviously, the result reached by the judge of compensation claims results in a grievous wrong to the claimant since it is beyond any dispute that the 1985 stipulation contemplated that payment of supplemental benefits under Section 440.15(1)(e)1. would continue unabated even though Travelers was going to be paying the PTD compensation benefits via an annuity funded through its affiliated life insurance company, and that Travelers would remain responsible for contributions to the Administration Trust Fund necessary to fund such payments. In effect, the judge ruled in 1988 that the parties to the stipulation could not legally accomplish what they intended to accomplish, even though another judge ruled just the opposite in 1985. The judge has treated the agreement as a total “washout” of the employer and carrier's future obligations for compensation benefits despite their explicit agreement that such was not the case under the agreement. The judge’s view of the law applicable to supplemental payments is more restrictive than called for by the applicable statutes or by the cited cases.
In the first place, both the carrier (Travelers) and the Division are in error in taking the position that the carrier can have no obligation to pay supplemental benefits prior to the amendment in 1984. See footnote 1, supra. As the Division points out in its brief, Section 440.51(1)(b) allows a carrier to elect to pay supplemental benefits directly and have such payments credited to their assessment under that section. The expense of such payments should be *182 reported by the carrier to the Division for inclusion in the annual expense of administration of this chapter, including supplemental benefits, so that these sums could be recouped by the Trust Fund as contemplated in subsection 440.51(1)(a). Thus, before determining that the provisions in paragraphs 11 and 15 of the approved 1985 stipulation are null and void (the legal effect of the ruling under review), the judge should have ascertained the intent of the parties and then attempted to carry it out under the act if possible. Since the carrier agreed that it was still responsible for contribution to the Trust Fund to insure the continuation of supplemental benefits payments, these two paragraphs could be construed as requiring the carrier to see to the payment of such benefits even if it meant an election to pay them directly under Section 440.51(l)(b) with credit for such payments. Giving the agreement such effect would obviously accomplish the recited objective of both the claimant and the carrier and avoid a result directly contrary to the explicit terms of the order approving the stipulation.
It is worthy to note that the problem arose in this case because the carrier, Travelers, did not report the payment of permanent total disability compensation benefits to the Division after December 1985, even though it had explicitly agreed such benefits were not terminated or released. Had Travelers complied with its undertaking pursuant to the stipulation and order, the Division could have properly included the expense of supplemental benefits for claimant in its estimate of expense required to be made under Section 440.51(1)(a).
This brings us to address the ability of the carrier and the claimant to agree that the carrier may obtain funding for its future compensation benefits by purchasing an annuity with a related life insurance company and thereby accomplish substantial cost savings that the carrier would otherwise incur by continuing to administer these benefits under the workers’ compensation insurance policy.[2] We have found no provision in chapter 440 that prohibits a workers’ compensation insurance carrier from funding future permanent total disability compensation benefits through the acquisition of an annuity from a related life insurance entity so long as the carrier continues its liability for such compensation benefits under the Act. Nor has Travelers or the Division identified any such statutory provision.[3] Their entire argument is based, as was the order of the judge, on the two decisions of this court in Division of Workers’ Compensation v. Hansborough, 507 So.2d 785 (Fla. 1st DCA 1987) and Shipp v. State Workers’ Compensation Trust Fund, 481 So.2d 76 (Fla. 1st DCA 1986). We do not view either case as having decided the issue before us.
In Shipp, we affirmed the denial of the employee’s claim for supplemental benefits after she had accepted a lump sum settlement of all future benefits, holding that the terms of the settlement effected a complete washout that released the employer and *183 carrier from any future liability under the Act. The settlement agreement terminated the employee’s rights to any future medical benefits as well as future compensation benefits. We quoted from the order approving the settlement to the effect that “ ‘the payment of the above described compensation is the total amount of compensation due the Employee.’ The order also stated that ‘said final payment represents the total payment of compensation benefits for permanent total disability until the expiration of Employee’s life.’ ” 481 So.2d at 77-78. Accordingly, it was clear that “the parties intended to discharge all liability in exchange for lump-sum payment and that no modification should be allowed under section 440.28, Florida Statutes (1981).” 481 So.2d at 79. The full amount of the settlement for medical and compensation benefits were paid directly to the employee in a lump sum. These are the facts material to that decision, and they stand in stark contrast to the facts in the instant case. Unlike the instant case, in Shipp there was no language in the agreement dealing with supplemental benefits expressing the parties’ intention that they should continue. There was no annuity purchased by the carrier to supply the monthly payments of benefits with an explicit reservation of the carrier’s liability for future compensation benefits. Shipp simply did not reach the issue presented in the instant case.
The stipulation approved in Hansbor-ough was described in that decision in the following language:
By stipulation, approved by the deputy commissioner, the appellee/claimant and the employer/carrier agreed that the claimant would receive a lump sum advance of permanent total disability benefits. The then-present value of all benefits was calculated as $236,612.85. The claimant would receive 95% of these benefits, or $224,782.20, as a lump sum advance when the deputy approved the advance. Upon reaching age 65 in 1997, the claimant would receive the remaining 5% of the benefits, as calculated at the time of the initial advance, or $11,830.65. The stipulation stated that the advance did not discharge the e/c’s liability under the worker’s compensation law and that the e/c would remain liable and responsible for the remaining 5% of the total benefits. The agreement further provided that the advance would have no effect on the claimant’s continuing entitlement to supplemental benefits payable under Section 440.15(1)(e)1, Florida Statutes.
507 So.2d at 786. In reversing the deputy commissioner’s order, which treated this as a partial lump sum advance and not a total washout of all benefits, the Hansborough court stated:
On appeal, the Division contends the obligation of the e/c to pay compensation under the stipulation is illusory. We agree. This stipulation is a ruse, designed sole to create the appearance of continuing liability and responsibility by the e/c so as to enable the claimant to continue receiving supplemental benefits. [At this point the court noted, “We do not address the question of entitlement to supplemental benefits where periodic payments continue to be paid after a lump-sum advance of less than all remaining compensation benefits.”]
⅝ ⅜ ⅜ ⅝ ⅜ ijs
Here, the appellee has merely agreed to accept 95% of total benefits today and deferred receipt of the remaining 5% until sometime in the future in an attempt to insure continuing entitlement to supplemental benefits. There would be no continuing stream of periodic benefit payments paid by the employer/carrier to the claimant during this period. Nor would the claimant receive the present value of the benefits as calculated when she reached age 65. There is no continuing responsibility by the employer/carrier to provide periodic payments nor are the periodic payments accumulated with interest to be payable at age 65. In fact, appellee would receive no benefit due to earned interest on the deferred 5%. The concern in s. 440.20(12)(a) is for continued periodic payment of permanent total disability benefits which entitle a claimant to supplemental benefits. Despite the deputy’s and the appellee’s attempts to distinguish Shipp and to argue continuing liability by the employer/carrier, *184 the instant lump sum advance is not distinguishable from Shipp except that in Shipp there was one payment while here there are two. In both cases, the employer/carrier’s responsibility for future benefits was ended by the approved agreement. The claimant need only wait until she turns 65 to collect the remaining portion of the lump-sum advance.
507 So.2d at 786-87.
The material facts set forth in Hansbor-ough are quite different from the instant case. Once again, the carrier was making a lump sum payment to the employee, 95% of it upon consummation of the settlement, which the employee would have the benefit of immediately. There was truly no substantial liability on the part of the employer and carrier which survived this transaction, and it is perfectly understandable that the court would not treat it to the contrary. This case, as did the settlement in Shipp, implicated the rationale expressed in Shipp that supplemental benefits are intended as protection “from the long-term effects of inflation that reduce the value of a fixed amount of benefits.... Once a lump-sum payment is authorized and received pursuant to § 440.20, a claimant has the option to invest the funds and offset the effects of inflation so that the purpose of supplemental benefits is satisfied.” Shipp, 481 So.2d at 79.
The contrasting facts in the case now before us do not implicate any of the underlying rationale in Hansborough or Shipp. The claimant in the instant case never received any sum of money over and above the $20,000 advance. Instead, he was to continue receiving monthly payments in amounts not below those specified by statute, either directly from Travelers or its related life insurance company. We cannot accept the Division’s argument that these facts are completely immaterial so as to make this case appear more analogous to Hansborough. Travelers as the carrier, not the claimant, purchased the annuity that was to provide the continuing periodic payments and, so long as the payments were as agreed and not less than the amounts required by statute, Travelers would satisfy its obligation under the statute.
Even though the payments exceed by approximately $90 per month the current compensation benefit being received by the claimant, the carrier also enjoyed a substantial economic motive for so funding these payments, because it appears that it would effect substantial savings under this new arrangement. Since the carrier was procuring the contemplated annuity, the parties’ agreement not to release the employer and carrier for future compensation benefits effectively placed on the carrier the risk of nonperformance of the annuity by expressly preserving the carrier’s liability for all future compensation payments due under the workers’ compensation act. Manifestly, under this stipulation, should the annuity payments cease or fall below the amounts of compensation benefits due under the Act, the employer and carrier remained liable to make those payments. They did not receive any release from the claimant on that liability, and the stipulation did not legally supplant their obligations under the Act. The express ruling of the judge of compensation claims to the contrary, suggesting that claimant’s sole remedy would be in an action in contract in a court of law, disregards the legal effect of these express reservations in the approved stipulation and gives them no recognition or effect whatsoever, although it is perfectly clear that the parties could make such an agreement so long as the carrier did not simultaneously agree to pay to claimant the entire amount of the present value of benefits. Hansborough simply did not have occasion to reach the issue before us, and the court so noted in footnote one of that opinion.
Contrary to appellant’s contention, the Division has a sufficient interest in the administration of the Trust Fund to be made a party to this proceeding. However, the Division could not become a party and obtain a ruling that completely overrules a prior order of a judge of compensation claims and defeats the intent and purpose of both parties as approved by that judge. That order had become final and, as the judge and the Division note, is no longer modifiable under Section 440.28. Ordinarily, the Division, as administrator of the *185 Trust Fund, is not a proper party to a proceeding to set the benefits due to an employee. The Division simply notes that PTD compensation benefits are being paid, and commences the payment of supplemental benefits when due under the statute. In the instant case, the Division was deprived of the opportunity to do this by Travelers’ failure to report that it was continuing to make periodic compensation payments to claimant, albeit such payments were through the annuity. If the Division had received prompt notice of the new arrangement and had any questions regarding its legality, it could have sought a modification of the order or a determination as to the Trust Fund’s obligation to make supplemental payments before the time for modification under Section 440.28 had run. That two year time period having now run, as noted in the appealed order, the claimant stands to be bound to an order providing for periodic payments for the remainder of his lifetime without receiving any supplemental benefits, and with no manifest remedy for either repudiating, rescinding, or modifying the order approving stipulation. We do not suggest that the Division and the Trust Fund should bear the burden of paying benefits without having included them as expenses for the years indicated, as the Division is entirely innocent of wrongdoing in this matter. Rather, it was Travelers’ failure to comply with the order approving stipulation by not recognizing its continuing liability for periodic compensation benefit payments that has placed all parties in this unique posture.
Accordingly, it is not necessary to overrule the intent and purpose of the 1985 order and stipulation; instead, Travelers should be treated as having elected to pay the supplemental benefits directly to claimant pursuant to Section 440.51(2), and the question of whether the Division should allow Travelers to take a credit for such payments in view of its failure to properly report the periodic payments being made to claimant is a matter between Travelers and the Division that is beyond the scope of the dispute raised in this proceeding.
We, therefore, reverse the appealed order and direct Travelers to pay all supplemental benefits due after December 25, 1985, to date and continuing. Such benefits should be calculated on the basis of the compensation benefits due under the Act, i.e., $610 per month, rather than the agreed payment rate of $700 per month.
REVERSED and REMANDED.
NIMMONS and ZEHMER, JJ., concur.
WENTWORTH, J., specially concurs with opinion.

. Section 440.15(1)(e)1. (1981) provides:
In case of permanent total disability resulting from injuries which occurred subsequent to June 30, 1955, and for which the liability of the employer for compensation has not been discharged under the provisions of s. 440.-20(12), the injured employee shall receive from the [Division of Workers’ Compensation] additional weekly compensation benefits equal to 5 percent of the injured employee's weekly compensation rate, as established pursuant to the law in effect on the date of his injury, multiplied by the number of calendar years since the date of injury and subject to the maximum weekly compensation rate set forth in s. 440.12(2). Such additional benefits shall be paid out of the Workers’ Compensation Administration Trust Fund. This applies to payments due after October 1, 1974. (e.s.)
Section 440.20(12) addresses the subject of lump-sum/advance payment of compensation. Section 440.15(1)(e)1. has since been amended to provide that, among other things, the employer is responsible for the payment of supplemental benefits in all cases in which the injury occurred on or after July 1, 1984. Chapter 84-267, Laws of Florida.
Section 440.50 provides for the establishment of the Workers’ Compensation Administration Trust Fund, and Section 440.51 provides that the Division’s expenses for administration of the Workers' Compensation Act are to be assessed against the state's workers' compensation carriers and self-insurers.

. According to the memorandum filed by claimant’s attorney at the hearing with objection from Travelers or the Division, it was demonstrated, without objection or refutation by Travelers (other than to comment that such savings were irrelevant), that "the. carrier effected a saving on administrative costs of paying each two weeks, plus the life expectancy payments based on 26.7 years at claimant’s then age of 49 years equals net worth value of $80,700.02 with a gross value of $197,041.72; therefore, a savings to the carrier of $116,341.70.” We cannot agree with Traveler's argument before the judge of compensation claims that this fact is irrelevant. For a workers' compensation carrier to be able to effect savings of this magnitude in paying benefits due to a disabled claimant by resorting to ordinary annuity methods rather than administration under the Workers' Compensation Act should be encouraged, not condemned, in this period when the entire workers' compensation insurance system is undergoing such a crisis.

. Section 440.20(2) authorizes a judge of compensation claims to alter the biweekly payments therein required to installments at other periods. This section does not explicitly authorize the approval of the substitution of an annuity for such payments. The provisions in subsections 440.20(12) and (13), however, do give the judge broad powers over agreements for alternatives to simply making periodic payments of compensation benefits as stipulated in the Act, and it would seem that these provisions could be broad enough to encompass resort to lifetime annuities in cases such as that now before us.